IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DAVID RAYE,                                    06-CV-1027-BR

                    Plaintiff,                 OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

**MERRILL SCHNEIDER**
Schneider Law Offices
14415 S.E. Stark
P.O. Box 16310
Portland, OR 97292
(503) 255-9092

**LINDA S. ZISKIN**
3 Monroe Parkway, Suite P
Lake Oswego, OR 97035
(503) 889-0472

            Attorneys for Plaintiff


1 - OPINION AND ORDER

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

**MICHAEL McGAUGHRAN**
Office of the General Counsel
**FRANCO L. BECIA**
**JOANNE ELIZABETH DANTONIO**
Special Assistant United States Attorneys
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075
(206) 615-2545

                    Attorneys for Defendant

**BROWN, Judge.**

        Plaintiff David Raye seeks judicial review of the Social Security Commissioner's final decision in which he denied Raye's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act for the "closed period" between April 18, 2003, and April 30, 2004.  This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

        Following a review of the record, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## ADMINISTRATIVE HISTORY

Raye applied for DIB on October 14, 2003, for the period between April 18, 2003, and April 30, 2004, after which he returned to work.  Tr. 17, 55-57.  His application was denied initially and on reconsideration.  Tr. 26-30, 36-38.  On November 7, 2005, a hearing was held before an Administrative Law Judge (ALJ).  Tr. 17.  Raye and Vocational Expert (VE) Gary Jesky testified at the hearing.  Tr. 17, 225-39.  Raye was represented by an attorney.  Tr. 17, 224.

The ALJ issued a decision on December 7, 2005, in which he found Raye was not disabled during the relevant period and was not entitled to DIB.  Tr. 23.  That decision became the final decision of the Commissioner on May 17, 2006, when the Appeals Council denied Raye's request for review.  Tr. 5-7.

## BACKGROUND

Born on November 11, 1964, Raye was 41 years old at the time of the hearing.  Tr. 17, 21.  Raye sustained knee injuries while in the military in 1982, and he asserts these injuries worsened and caused a period of disability in 2003 and 2004.  Tr. 17, 173.  Raye also has struggled with obesity.  Tr. 19, 225-26.  By April 2003, Raye asserts he was unable to walk any significant distance without leg braces, but an allergic reaction to neoprene in the leg braces prevented him from wearing them.  Tr. 168.  On

3 - OPINION AND ORDER

April 14, 2003, it was recommended that Raye use a wheelchair because he could barely walk without leg braces.  Tr. 168.  In April 2004, Raye had improved enough to return to full-time employment.  Tr. 234.

Raye also alleges he suffered from depression and hypertension during the relevant period.  Tr. 173, 187.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld even if the "evidence is susceptible to more than one rational interpretation." *Andrews,* 53 F.3d at 1039-40. The court may not substitute its judgment for that of the Commissioner. *Batson,* 359 F.3d at 1193.

## DISABILITY ANALYSIS

### II. The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. §§ 404.1520(a). Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Yuckert*, 482 U.S. at 140. *See also* 20 C.F.R.

§§ 404.1520(a)(4)(i).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related activities that the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work that he has done in the past. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv).

6 - OPINION AND ORDER

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. §§ 404.1520(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One, the ALJ found Raye did not engage in substantial gainful activity between April 18, 2003, and April 30, 2004.  Tr. 22.

At Step Two, the ALJ found Raye's obesity and patellofemoral syndrome in both knees constituted a severe impairment for the relevant period.  Tr. 19, 22.

At Step Three, the ALJ found Raye's impairments or the combination of his impairments did not meet or equal a listing for the relevant period.  Tr. 19, 22.

At Step Four, the ALJ found Raye was not able to return to

past relevant work as a truck driver or tow-truck driver during the relevant period.  Tr. 21, 23.  The ALJ, however, found Raye retained the RFC to perform sedentary work that did not involve stair climbing or the use of ladders, ropes, and/or scaffolds. Tr. 21.

At Step Five, the ALJ found Raye could have worked at a significant number of sedentary jobs that existed in the national economy during the relevant period.  Tr. 22.  The ALJ identified the job of "taxi dispatcher" as an example of such a job. Tr. 22-23.  Thus, the ALJ found Raye was not disabled at any time during his claimed period of disability and, therefore, was not entitled to DIB.  Tr. 22-23.


## DISCUSSION

Raye asserts the ALJ erred when he rejected Raye's testimony as "not totally credible" and did not fully consider evidence offered by John Fitzwater, Raye's friend.  Raye also contends the ALJ erred at Steps Two, Three, and Five.

At Step Two, Ray contends the ALJ erred when he failed to consider Raye's alleged depression while assessing the severity of Raye's combined impairments.  At Step Three, Ray contends the ALJ erred by failing to consider Raye's alleged depression and hypertension when the ALJ determined Raye's combined impairments did not meet or equal a listing.  At Step Five, Raye contends the

8 - OPINION AND ORDER

ALJ erred when he found Raye could have performed several sedentary jobs that existed in the national economy but listed only taxi dispatcher as an example even though it is a semi-skilled job that Raye was not able to perform.

**I.    Testimony of Raye and Lay Evidence from John Fitzwater.**

   **A.    Raye's Testimony.**

   Raye contends the ALJ erred when he found Raye's testimony "not totally credible."  Tr. 22.

   The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  When construing credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

   When assessing a claimant's credibility, the ALJ must apply the threshold test articulated in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986).  The ALJ first must determine whether there is objective medical evidence of an impairment and whether the impairment could reasonably cause some degree of the claimant's symptom(s).  *Id*. at 1407.  "If the claimant produces evidence to

meet the *Cotton* test and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (citations omitted). When determining credibility, an ALJ can use ordinary techniques such as the "claimant's reputation for truthfulness and inconsistencies in claimant's testimony." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Raye testified his knees hurt all of the time.  Tr. 225. Claudia Carlson, Nurse Practitioner, ordered a wheelchair for Raye to use after he had an allergic reaction to the neoprene knee braces.  Tr. 233.  Raye testified he used the wheelchair from April 2003 until February 2004.  Tr. 233-34.  As his condition improved, Raye ambulated with the aid of leg braces and arm crutches.  Tr. 228, 234.  Although he briefly worked as a taxi dispatcher for Broadway Cab, Raye stated he could not continue working there because getting up and down the stairs to the dispatch office was "getting to be too much."  Tr. 228.  Raye testified he ultimately stopped using leg braces in order to "have a check coming in and . . . put food on the table."  Tr. 234.

**B.    The ALJ's Decision.**

The ALJ did not afford great weight to Raye's testimony that he could not work during the relevant period.  Tr. 20.  The ALJ

found Raye's daily activities were "not limited to the extent one would expect."  Tr. 20.  The ALJ supported his conclusion with the fact that Raye did light housework, helped with cooking, wrote shopping lists, watched television six hours a day, built model airplanes and vehicles, fished once a week, and went out to dinner three or four times a week.  Tr. 20.  The ALJ also noted Raye was actively looking for work by searching computer sources on a daily basis and visiting a state unemployment office two or three times a week.  Tr. 20.  The ALJ, therefore, concluded Raye was capable of meeting the demands of competitive, unskilled work during the relevant period and "was at all times ready, willing and able to begin a new job as soon as it was offered to him." Tr. 20.

It is undisputed that the ALJ was required to provide clear and convincing evidence to support his finding that Raye's testimony was not totally credible.  The Commissioner points out that some medical evidence in the record was inconsistent with Raye's testimony.  For example, Kim Webster, M.D., opined Raye's knee problems were less severe than he stated, and Raye might not have needed to be confined to a wheelchair.  Tr. 146.  Although Dr. Webster's statement could undercut Raye's claims, the ALJ does not indicate in his opinion that he relied on Dr. Webster's medical opinions to reach his conclusion.  *See Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006)(a court is "constrained to

review the reasons the ALJ asserts" and "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.")(internal citations omitted).

In addition, the fact that Raye sought employment during the period of his alleged disability does not necessarily undermine his credibility. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005)(when the record indicates the claimant sought employment during his alleged disability, it suggests "no more than he was doing his utmost, in spite of his health, to support himself."). Similarly, Raye's daily activities do not necessarily discredit Raye's testimony. As the Ninth Circuit has held, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001).

On this record, therefore, the Court finds the ALJ does not show by clear and convincing evidence in the record that Raye's testimony regarding his limitations was not totally credible. Thus, the Court concludes the ALJ erred when he rejected Raye's testimony without providing legally sufficient reasons supported by substantial evidence in the record for doing so.

**B.    Evidence From John Fitzwater.**

Raye contends the ALJ did not properly credit information provided by John Fitzwater, a friend of Raye's.  Tr. 106-14.  The ALJ must provide reasons germane to each lay witness before rejecting the information provided by the lay witness, but the ALJ is not required to consider or to address nonprobative information.  *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  *See also Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

When he determined Ray could have performed some kind of work during the relevant period, the ALJ partially relied on information provided by Fitzwater in a questionnaire that Raye fished once a week and ate out three or four times a week. Tr. 20, 106.  Raye notes, however, the ALJ did not consider Fitzwater's statements that Raye did not sleep well; had difficulty entering and exiting the bathtub; was limited in preparing meals; did only limited housework; and had difficulty with physical activities such as lifting, sitting, and stair climbing.  Tr. 106-11.

On this record, therefore, the Court finds the ALJ erred when he did not provide legally sufficient reasons for accepting some of the information provided by Fitzwater and rejecting the

part that was consistent with Raye's testimony.  *See Lewis*, 236
F.3d at 511.

**II.  The ALJ's Conclusions at Steps Two, Three, and Five.**

    **A.  Step Two.**

Raye contends the ALJ erred at Step Two by failing to
consider the effect of Raye's alleged depression when the ALJ
assessed the severity of Raye's combined impairments.

At Step Two, the ALJ concluded Raye's obesity and bilateral
patellofemoral syndrome were "severe" during the relevant period.
Tr. 22.  As noted, however, however, the ALJ did not consider the
effect depression also might have had on the severity of Raye's
impairments.

State Disability Determination Services (DDS)[1] psychologist
Karen Bates-Smith, Ph.D., evaluated Raye on April 9, 2004.
Tr. 184.  Dr. Bates-Smith concluded Raye did not have any
restrictions in activities of daily living; difficulties in
social functioning; difficulties maintaining concentration,
persistence, or pace; or episodes of extended decompression.
Tr. 154.  She reported, however, that Raye was suffering from
depression that was medically determinable but that did not

---

[1] Disability Determination Services (DDS) is a federally
funded state agency that makes eligibility determinations on
behalf and under the supervision of the Social Security
Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R.
§ 416.903.

precisely satisfy diagnostic criteria for a depressive syndrome.
Tr. 187.

Other medical professionals also considered whether Raye
suffered from depression. Jonathan H. Hoppert, M.D., noted Raye
discussed psychiatric problems. Dr. Hoppert opined "[o]ne might
consider psychiatric evaluation at some time in the future if
this has not already been done through the Veteran's Hospital."
Tr. 141. On December 29, 2003, Raye informed Kim Webster, M.D.,
that he had a past medical history including a "little bit of
depression." Tr. 144. On October 30, 2003, Raye also informed
Nurse Practiioner Claudia Carlson that he was depressed because
he was not working and wanted antidepressant medication for such
depression and to help him quit smoking. Tr. 159. Raye was
placed on Wellbutrin (an antidepressant and smoking-cessation
medication). On November 6, 2003, Raye reported:  "Wellbutrin
working great - almost quit smoking." Tr. 158.

The ALJ must provide specific reasons for failing to
consider significant probative evidence. *Vincent v. Heckler*, 739
F.2d at 1395. Whether Raye suffered from depression and the
effect of that depression is probative of the severity of his
impairments. Moreover, the ALJ bears the burden of developing
the record. *DeLorme*, 924 F.2d at 849.

The ALJ found Raye did not establish that his alleged

depression was severe under the regulations because he was only expressly diagnosed as suffering from depression by Nurse Practitioner Carlson.  Tr. 158.  As noted, however, Dr. Bates-Smith also reported Raye suffered from medically determinable depression.  Nevertheless, the ALJ did not consider the effect Raye's depression might have had on the severity of his combined impairments.

Accordingly, the Court concludes the ALJ erred when he failed to give legally sufficient reasons supported by substantial evidence in the record for not considering the effect of Raye's depression.

**B.    Step Three.**

At Step Three, Ray contends the ALJ erred by failing to consider Raye's depression and hypertension when the ALJ determined Raye's combined impairments did not meet or equal a listing.  Tr. 173.  Raye also contends the ALJ did not properly consider whether Raye's hypertension affected his impairments.

As noted, the Court has concluded the ALJ erred when he failed to consider Raye's depression at Step Two.  Because the ALJ did not determine the effect of Raye's depression, the ALJ did not consider the full extent of Raye's impairments.

In addition, Nurse Practitioner Carlson noted on February 14, 2003, that Raye had uncontrolled hypertension in the setting of coronary artery disease.  Tr. 173.  Nurse Practitioner

16 - OPINION AND ORDER

Carlson also had diagnosed Raye with hypertension in May 2002. Tr. 177-78.  Raye's hypertension, like his depression, could be relevant to whether his combined impairments met or equaled a listing.  *See* 20 C.F.R. § 404.1523 (ALJ must "consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

Accordingly, the Court concludes the ALJ erred at Step Three when he did provide legally sufficient reasons supported by substantial evidence in the record for failing to consider Raye's depression and hypertension when he did not consider the effect of hypertension and depression on Raye's impairments and when he determined Raye's combined impairments did not meet or equal a listed impairment.

**C.    Step Five.**

At Step Five, Raye contends the ALJ erred when he found Raye could perform several sedentary jobs that exist in the national economy.

As noted, an ALJ may satisfy his burden at Step Five either through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 2.  Here the ALJ did not properly rely on either source.

17 - OPINION AND ORDER

The ALJ's cursory examination of the VE at Raye's hearing centered on the nature of "sedentary work" and the possible limitations that would prevent a claimant from performing such work.  Tr. 237-39.  The ALJ noted the VE testified that Raye could have worked as a taxi dispatcher during the relevant period.  Tr. 22, 236-39.  A review of the transcript of the hearing, however, does not support the ALJ's assertion.  *See* Tr. 235-40.  In addition, the ALJ provided the VE with a hypothetical based on a 41-year-old man with a high-school education who was capable of performing sedentary work that did not involve ladders or more than three or four stairs.  Tr. 236-37.  The ALJ, however, did not appear to include all of Raye's limitations in this hypothetical nor did the VE testify as to the jobs that were available to a person with the few limitations included in the ALJ's hypothetical.  Thus, the VE's testimony was not a sufficient basis for the ALJ to determine there were a significant number of sedentary jobs in the national economy that Raye could perform during the relevant period.

The ALJ may rely on the Medical-Vocational Guidelines without seeking testimony from a VE only if the Guidelines "*completely* and *accurately* represent a claimant's limitations." *Tackett*, 180 F.3d at 1101 (emphasis in original).  The Court already has concluded the ALJ erred when he evaluated Raye's limitations.  Thus, it is not clear whether the ALJ could have

relied on the Medical-Vocational Guidelines because of his failure to determine the extent of Raye's impairments.  In any event, the ALJ did not indicate he relied on the Medical-Vocational Guidelines as a basis for his opinion.

The Commissioner concedes the ALJ erred when he identified "taxi dispatcher," which is a semi-skilled job, as an example of sedentary work that Raye could perform.  Tr. 22-23.  *See also* 20 C.F.R. § 416.968(b).  Even though the record reflects Raye worked as a taxi dispatcher for a brief time during the relevant period, his impairments did not allow him to work in that job long enough to learn how to do it; *i.e.*, to gain transferrable skills from that job.  Tr. 67.  *See also* Social Security Ruling (SSR) 83-10 (the ability to perform semi-skilled work is dependent on transferrable skills acquired from past job experience).  In fact, the ALJ found Raye did not have any transferrable skills.  Tr. 23.

Thus, the ALJ erred at Step Five when he inaccurately concluded Raye could perform sedentary work at the semi-skilled position of taxi dispatcher.  The ALJ did not list any other kind of positions in the national economy that Raye could do even though he found Raye could perform "a significant range of sedentary work."  Tr. 22, 23.

Accordingly, the Court concludes the ALJ erred at Step Five when he failed to base his findings on testimony from the VE or

19 - OPINION AND ORDER

to rely on the Medical-Vocational Guidelines to determine whether
Raye would have been able to work at jobs that existed in the
national economy during the relevant period and to identify such
jobs.

## REMAND

The decision whether to remand for further proceedings or
for the payment of benefits is a decision within the discretion
of the Court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.
2000).  This decision turns on the likely utility of further
proceedings.  *Id.* at 1179.  The Court may "direct an
award of benefits where the record has been fully developed and
where further administrative proceedings would serve no useful
purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed."  *Harman*, 211 F.3d at 1178.  The
Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id*.  The second and third prongs of the test often merge into a

single question:  Whether the ALJ would have to award benefits if
the case were remanded for further proceedings.  *Id.* at 1178 n.2.

     As noted, the Court concludes the ALJ erred when he failed
to give legally sufficient reasons for finding Raye's testimony
"not totally credible" and for rejecting lay evidence from John
Fitzwater that was consistent with Raye's testimony; at Step Two
by failing to give legally sufficient reasons for not considering
the effect of Raye's depression; at Step Three when he failed to
consider whether Raye's depression and hypertension combined with
his other impairments to meet or to equal a listed impairment;
and at Step Five by not relying on VE testimony or the Medical-
Vocational Guidelines to determine whether Raye could have worked
at jobs that existed in the national economy during the relevant
period and to identify such jobs.

     It is not possible for the Court to determine whether
reevaluation of the evidence, testimony from the VE based on a
complete hypothetical, or use of the Medical-Vocational
Guidelines would require the ALJ to award benefits to Raye for
the relevant period.  The Court, therefore, concludes further
administrative proceedings are necessary.

<u>**CONCLUSION**</u>

     For these reasons, the Court **REVERSES** the Commissioner's

decision and **REMANDS** this matter pursuant to sentence four of 42

U.S.C. § 405(g) for further administrative proceedings.

IT IS SO ORDERED.

DATED this 9th day of May, 2007.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

22 - OPINION AND ORDER